[No. 34. Second Appellate District.—August 31, 1905.]

RICHARD BRADLEY, as Administrator, etc., Respondent, v. E. E. BUSH, Appellant.

ACTION AGAINST PAYEE OF NOTES AS INDORSER—PLEADING—GENERAL ISSUE — EVIDENCE — INDORSEMENT TO MAKER—TITLE THROUGH MAKER.—In an action by an administrator against the payee of notes as an indorser thereof, where the case was tried upon the theory that a general denial in the answer was sufficient to raise an issue, except as to the execution of the notes, it was error to exclude evidence to show that the notes were transferred by the indorsement to the maker, and were to be surrendered up thereto, and were to be transferred by the maker as evidences of debt secured by mort-

gage, in consideration of advances to be made to the maker by plaintiff's intestate.

ID.—EFFECT OF TRANSFERS—RIGHT OF ACTION AGAINST PAYEE NOT TRANSFERABLE BY MAKER.—The indorsement and surrender of the notes to the maker, with the understanding that they were to be transferred by the maker with the benefit of the mortgage security, was merely to keep the notes and security therefor alive for purposes of such transfer by the maker; but as the maker could not acquire any right of action upon the indorsement made thereto by the payee, no such right could be transferred by the maker, and the mere title to the notes was vested in the transferee of the maker.

APPEAL from an order of the Superior Court of Kings County denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Hudson & Pryor, R. J. Hudson, and John F. Pryor, for Appellant.

H. Scott Jacobs, for Respondent.

SMITH, J.—Appeal from an order denying the defendant's motion for a new trial.

This is a suit by the administrator of an alleged indorsee against the defendant as maker and indorser of two promissory notes of the Sunset Vineyard Company, of date January 25, 1892, for the sum of one thousand dollars each. The notes became due on January 1, 1898, and on non-payment were duly protested and notice of dishonor given to the defendant.

The complaint alleges that the defendant, on or before February 1, 1894, for value received, duly indorsed, transferred, and delivered said promissory notes to the deceased, Bradley, the indorsee, and that at the time of his death he was the owner and holder of the notes. The answer "denies each and every material allegation" of the complaint; and as the case seems to have been tried upon the theory of the sufficiency of this denial, all of the allegations of the complaint are to be regarded as denied, with the exception of the execution of the promissory notes, which are set out at length. It is also affirmatively alleged that the note sued on was secured by a mortgage on real property; that there was no

consideration for the alleged indorsement and transfer; and, for separate defense, in effect, that the notes in question were two of thirty promissory notes made to defendant by the Sunset Vineyard Company as part of the purchase price of certain lands sold to it by the defendant, which at the time of the indorsement had been set to vineyard, and were being operated as such by the company, which owned no other land; that the company, of which Bradley was a large stockholder, was at that time heavily indebted and pressed by its creditors, and it thus became necessary for them to raise a large amount of money, which could be borrowed only from Bradley; and further (in terms), "that plaintiff's intestate, James A. Bradley, shortly prior to the indorsement of the notes sued on by defendant, complained to defendant (who was a stockholder and director of the company), that the Sunset Vineyard Company had paid a sum for its real estate greatly in excess of its value, and desired defendant to surrender some of the notes given to him as part of the purchase price for said land, and the said James A. Bradley wanted and was anxious to continue the raising of grapes and in pursuing the business of the corporation, as aforesaid; [that] it was then proposed by said James A. Bradley to defendant Bush that if he (Bush) would surrender the two notes in this action sued upon, said Bradley would advance to the corporation, Sunset Vineyard Company, the face value of said notes, with interest, which said proposition was accepted by defendant Bush, and thereupon said Bush indorsed said notes, and the moneys realized thereon were applied to the payment of the debts of the said corporation and the further carrying on of its business."

The court found that the allegations of the complaint were true; that the notes were secured by mortgage as alleged in the answer; that it was not true that there was no consideration for the defendant's indorsement; and (in the language of the answer) that the allegations of the defendant's special defense were true; and on these findings judgment was entered for the plaintiff.

The only witnesses who testified in the case were the plaintiff and defendant. The former testified that he received the notes after the death of his intestate from "Mr. Upton of the Central California Bank"; and he says as to one of the notes,

"I think it was amongst James A. Bradley's papers"; which was all he knew of the matter, except that he had received no payment upon the notes. From the defendant's testimony it appears that at the date of the transaction the notes were in the hands of Mr. Upton, as his bailee, already indorsed; and. as to the terms of the transaction, that Bradley, who was the largest stockholder in the company, proposed to it: "If you will arrange with Bush to surrender those notes to you, I will let you have the money to go ahead and take care of your vineyard"; and also that he said to defendant: "If you will surrender those notes to the company, I will take the matter up and advance the company sufficient money." From other parts of the testimony it appears that the understanding was that Bradley was to take from the company the notes thus surrendered to it. Thereupon, the witness testifies: "I gave them [that is, the company] an order on Mr. Upton, who held the notes, to go and get them." Some little confusion is produced by answers of the witness to questions asked him on cross-examination; but on the whole it may be gathered that the transaction was as above stated; and on the close of his testimony, the defendant's attorneys proposed to put Mr. Upton on the stand, saying: "We expect to prove by him that Mr. Bush sent him word to give up those two notes to either Mr. Bradley, or some other representative of the Sunset Vineyard Company, and that Mr. Bradley came to Mr. Upton, who had the notes in his possession, and that Mr. Upton gave them to Mr. Bradley; [that] at the same time Mr. Upton asked Mr. Bradley whether he had been buying some notes, and Mr. Bradley said: 'No. I am a large stockholder in the Sunset and I have got to advance some money to them, and these notes are to be surrendered up.'" But the court excluded the evidence, saying: "There is the same evidence before the court now. I don't believe there can be any dispute as to the facts of the case at all." To which ruling the defendant excepted.

From this it appears that the court understood the transaction as stated above; but it will be observed that the declarations of Bradley to Upton had not been proved, and that the testimony offered as to these was not only new, but of material importance. For, the transaction being as stated, it would follow that Bush did not indorse, transfer, or deliver

the note to Bradley, but to the company; as to which the transfer and indorsement could create no obligation (Civ. Code, sec. 3116) ; nor, indeed, could it have any effect other than that of a mere relinquishment or surrender of his title to the company. The ordinary effect of such a transaction would be to extinguish the obligation itself; but here, by agreement between Bradley and the corporation, assented to by Bush—who held the other notes—the note was not to be canceled, but was to be transferred by the latter to Bradley, to be held by him as evidence of its debt, with the benefit of the mortgage security. Such an agreement would doubtless be valid, and its effect would be to keep the note alive and to vest the title in Bradley. But—assuming the facts to be as stated in the offer of proof—his title would come to him from the company, and there would be no contract of transfer or indorsement between him and Bush; nor, indeed, any direct contractual relation whatever. Nor could Bradley acquire from the company any right of action against Bush; since the company itself by the transfer or surrender to it of its own obligation did not acquire such right of action.

That such was the contract might, indeed, have been inferred from the uncontradicted testimony of Bush, without the aid of the testimony offered; or, indeed, it might be inferred from the specific facts found by the court, if they stood by themselves. But, as appears by the findings as to the transfer, indorsement, and delivery of the note, and as to consideration, the court took a different view, and it is clear that had the rejected evidence been admitted, these findings could not be sustained. For these reasons, the order appealed from must be reversed.

The order appealed from is reversed and the cause remanded for new trial.

Allen, J., concurred.

GRAY, P. J.—I concur for the sole reason that I think the court erred in excluding the offered testimony of Upton.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on October 30, 1905.